# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KELLEY ROOKS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.** |
| ) | **Division** |
| vs. ) | |
| ) | |
| ) | |
| **ACQ HOLDINGS, LLC** ) | **JURY TRIAL DEMAND** |
| <u>*Serve Registered Agent*</u>**:** ) | |
| Michael Rametta ) | |
| 7722 Caenen St. ) | |
| Lenexa, KS 66216 ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiff, Kelley Rooks, by and through the undersigned counsel, states and alleges as follows for her Complaint against the above-named Defendant, ACQ Holdings LLC:

## NATURE OF THE CASE

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights based on sex discrimination and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981").

2. Plaintiff seeks all available remedies from Defendant, including compensatory and punitive damages, as well as her costs and reasonable attorneys' fees as provided by law, and any additional equitable relief the Court deems just and warranted.

1

## PARTIES

3. Plaintiff, **Kelley Rooks** is, and was at all times relevant to the allegations contained here, a Black female resident of the State of Missouri, who worked for Defendant at its location in Leawood, Kansas.

4. Defendant, **ACQ Holdings LLC,** is a limited liability company, organized under the laws of the State of Kansas, that is in the business of debt collection.

5. ACQ Holdings LLC has two members who own more than 5% of the company. The members of the LLC are Michael Rametta, a Kansas resident, and Timothy Robbins, also a Kansas resident.

6. Defendant is a company authorized to and conducting business in the State of Kansas, and more specifically, in Leawood, Kansas.

7. Defendant is, and was at all times relevant to the allegations contained here, an "employer" as defined in Title VII and 42 U.S.C. §1981.

## JURISDICTION AND VENUE

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, because Plaintiff's claims arise under federal laws.

9. This Court has personal jurisdiction over Defendant because it employed Plaintiff in Kansas, conducted and transacted business in Kansas, and all or a substantial portion of the discriminatory and wrongful acts alleged herein occurred in the State of Kansas.

10. Venue is proper in this Court because all or a substantial part of the alleged acts, omissions, and occurrences giving rise to the claims alleged herein occurred at Defendant's business, Plaintiff's former place of employment, in Leawood, Kansas.

## CONDITIONS PRECEDENT

11. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 12, 2021, alleging discrimination on the basis of sex and race, against Defendant. *A true and accurate copy of the Charge of Discrimination is attached hereto as* **Exhibit A** *and incorporated herein by reference.*

12. The EEOC issued Plaintiff a Notice of Right to Sue with respect to her Charge of Discrimination on or about March 3, 2021. *A true and accurate copy of the charge of discrimination is attached hereto as* **Exhibit B** *and incorporated herein by reference.*

13. This action is timely filed and Plaintiff has met all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

14. Plaintiff began her employment with ACQ Holdings LLC on or about July 8, 2019, in the position of full-time Customer Service Representative.

15. Plaintiff held the position of full-time Customer Service Representative throughout her employment with Defendant.

16. During Plaintiff's employment with Defendant, she satisfactorily performed the duties and responsibilities of her position and did not receive written counseling or criticism.

17. On or about March 20, 2020, Defendant sent a company-wide email stating that the company would be shutting down, temporarily, due to the COVID-19 pandemic.

18. Defendant informed its employees that all non-essential workers could seek unemployment and that they would contact the employees when Defendant re-opened and employees were to return to work.

19. The company-wide email from Defendant also stated that the company fully intended to bring everyone back to work.

20. As of the date of the shut down in March 2020, there were approximately 40 employees who worked for Defendant at the Leawood, Kansas location.

21. Of the 40 employees who worked for Defendant at its Leawood location, 12 of the employees were Black. Of the 12 Black employees, five (5) were Black females.

22. Months passed following the March 20, 2020 email from Defendant to its employees, without Plaintiff receiving any notification to return to work.

23. Plaintiff became aware in the Spring and Summer of 2020, that many of the employees had already returned to work, including several Customer Service Representatives.

24. Based on information and belief, Black male employees were called back to work, as were White male and female employees.

25. On or about July 8, 2020, Plaintiff emailed Defendant's Chief Operations Officer, Brian Dampman, asking him about her return-to-work status.

26. In response, Mr. Dampman stated that 70% of the total work force had been brought back and that the company would need more employees to return once it returns to its pre-pandemic size, in terms of customers and revenue.

27. Mr. Dampman concluded the email by stating to Plaintiff that he would be in touch about her return to work.

28. Thereafter, and during the months of August and October 2020, Plaintiff saw online postings by the Defendant for the position of full-time Customer Service Representative. The postings were on job-search websites as well as Defendant's website.

29. Plaintiff continued to see postings for her position during February 2021.

30. Despite Defendant needing full-time Customer Service Representatives, as indicated in their online job postings, and Plaintiff being a good employee who was ready, willing, and able to return to work for Defendant, Plaintiff was not contacted to return to work.

31. Based on information and belief, the other four Black female employees were also not contacted about returning to their positions with Defendant.

32. Based on information and belief, three of the other four Black female employees had also held the position of full-time Customer Service Representative. The other Black female employee worked in the finance department.

33. During Plaintiff's employment with Defendant, Plaintiff witnessed upper-management treat Black female employees more harshly than any White counterparts.

34. The disparate treatment Plaintiff witnessed included upper-management criticizing and berating the Black female employees in front of other employees. Other employees were not treated in a similar fashion.

35. The upper-management employed by Defendant is exclusively White. There are no Black males or females in upper-management.

36. Based on information and belief, Defendant has engaged in a pattern and practice of discrimination based on sex/gender and race.

37. Based on information and belief, Defendant has engaged in an ongoing pattern and practice of sex/gender and race discrimination against Plaintiff and other Black female employees.

38. Based on information and belief, the true reason for Plaintiff not being contacted to return to work in her position of full-time Customer Service Representative is based on her sex/gender and/or race, and was part of Defendant's ongoing pattern of discrimination.

39. Based on information and belief, the true reason that the other Black female employees were not contacted to return to work is based on their sex/gender and/or race, and was part of Defendant's ongoing pattern of discrimination.

40. At all times relevant herein, the individuals referenced, including but not limited to Brian Dampman, were acting within the course and scope of their employment with Defendant, or their actions were expressly authorized by Defendant, thereby making Defendant vicariously liable for their actions under the doctrine of *respondeat superior.*

41. At all times relevant herein, Defendant ratified the actions of its employees and agents, thus making Defendant liable for the actions of its employees.

42. As a result of the discrimination alleged herein, Plaintiff has suffered and will continue to suffer damages, including but not limited to past and future lost wages and benefits, and emotional distress.

## COUNT I
### Title VII Sex/Gender Discrimination (42 U.S.C. § 2000e *et seq.*)

43. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

44. During the course and scope of Plaintiff's employment with Defendant, Defendant's representatives, including but not limited to Brian Dampman, while acting in the course and scope of employment, engaged in a pattern and practice of discrimination against Plaintiff based on her sex/gender in violation of Title VII.

45. By reason of Plaintiff's sex, Defendant treated Plaintiff and other Black females less favorably than their Black male counterparts and contemporaries.

46. The discrimination included Plaintiff and other Black females being subjected to unfair and harsher criticism as compared to Black male counterparts and contemporaries.

47. The discrimination included Defendant failing to contact Plaintiff and other Black female employees to return to work when Defendant resumed business operations and for months thereafter, despite their being a need for employees to fill the positions which Plaintiff and the other Black female employees had held prior to the March 2020 pandemic-related closure. Black males, in contrast, were contacted to return to work.

48. The actions of Defendant have been discriminatory and constitute a disparity in treatment of Plaintiff and other Black female employees, with respect to the opportunities, terms, conditions, and privileges of employment, and constitute unlawful employment practices in violation of Title VII.

49. As a direct and proximate cause of Defendant's discrimination, Plaintiff has incurred and will continue to incur damages, including but not limited to past and future lost wages and benefits, and emotional distress.

50. The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint for Damages, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. § 2000e *et seq.*; for an award of compensatory and punitive damages, for costs expended, reasonable attorneys' fees, and for such other and further relief as this Court deems just, proper and equitable.

## COUNT II
## Title VII Race Discrimination (42 U.S.C. §2000e *et seq*.)

51. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

52. During the course and scope of Plaintiff's employment with Defendant, Defendant's representative, including but not limited to Brian Dampman, while acting in the course and scope of employment, engaged in a pattern and practice of discrimination against Plaintiff based on her race in violation of Title VII.

53. By reason of Plaintiff's race, Defendant treated Plaintiff and other Black female employees less favorably than their White female counterparts and contemporaries.

54. The discrimination included Plaintiff and other Black females being subjected to unfair and harsher criticism as compared to White female counterparts and contemporaries.

55. The discrimination included Plaintiff and other Black female employees not being contacted to return to work when Defendant resumed business operations and for months thereafter, despite their being a need for employees to fill the positions which Plaintiff and other Black female employees had held prior to the March 2020 pandemic-related closure. White female employees were contacted to return to work.

56. The actions of Defendant have been discriminatory and constitute a disparity in treatment of Plaintiff and other Black females, as to the opportunities, terms, conditions, and privileges of employment, and constitute unlawful employment practices in violation of Title VII.

57. As a direct and proximate cause of Defendant's discrimination, Plaintiff has incurred and will continue to incur damages, including but not limited to lost wages and benefits, and emotional distress.

58. The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint for Damages, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §2000e *et seq.*; for an award of compensatory and punitive damages, for costs expended, reasonable attorneys' fees, and for such other and further relief as this Court deems just, proper and equitable.

## COUNT III
## Violation of 42 U.S.C. §1981

59. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

60. During the course and scope of Plaintiff's employment, Defendant's representatives, agents and employees, acting within the course and scope of their employment, engaged in a pattern of practice of intentional discrimination against Plaintiff based on her race in the making and enforcing of a contract.

61. Defendant, through its representatives, agents and employees, engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

62. The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

63. As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §1981; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees; and for such other relief as this Court deems just, proper and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on Counts I, II and III alleged herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial for the above referenced matter.

Respectfully submitted,

**HOLMAN SCHIAVONE, LLC**

By: */s/ Kathleen E. Mannion*
Anne Schiavone, KS Bar #19669
Kathleen E. Mannion, KS Bar #25362
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Facsimile: 816.283.8739
aschiavone@hslawllc.com
kmannion@hslawllc.com
**ATTORNEYS FOR PLAINTIFF**